AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

**LODGED**
CLERK, U.S. DISTRICT COURT
3/1/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___VAM___ DEPUTY

**FILED**
CLERK, U.S. DISTRICT COURT
03/01/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___dj___ DEPUTY

| | |
|---|---|
| United States of America <br><br> v. <br><br> PATRICK BARNETT and <br> SAMUEL MARTINEZ, JR., <br><br> Defendant(s) | Case No.    2:22-mj-00828-DUTY |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of January 5, 2022, in the county of San Luis Obispo in the Central District of

California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(k) | Possession of a Firearm with an Altered or Obliterated Serial Number |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*/s/ Justin Francis*
Complainant's signature

Justin Francis, FBI Task Force Officer
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:        March 1, 2022

*Judge's signature*

City and state:        Santa Barbara (lal)
~~Los Angeles~~, California

Hon. Louise A. LaMothe, U.S. Magistrate Judge
Printed name and title

AUSA: Maria Elena Stiteler (x6148)

**AFFIDAVIT**

I, Justin Francis, being duly sworn, declare and state as follows:

## I.   PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal complaint and arrest warrants against Patrick BARNETT ("BARNETT") and Samuel MARTINEZ Jr. ("MARTINEZ Jr.") for a violation of 18 U.S.C. § 922(k): Possession of a Firearm with an Altered or Obliterated Serial Number.

2.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrants, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

3.   I am a Task Force Officer ("TFO") with the Santa Maria Resident Agency and have been so employed since September 2021. I have been a duly sworn Deputy with the San Luis Obispo County Sheriff Department ("SLOSD") since January 2020.  I am currently assigned as a TFO for the FBI.  Before January 2020, I was employed as a Police Officer for the Pismo Beach Police

1

Department for three years and Fullerton Police Department for three years.

4.    In March of 2012, I graduated from the Golden West Community College Basic Law Enforcement Academy in Huntington Beach, California.  At the Basic Law Enforcement Academy, I completed approximately 780 hours of instruction in basic police practices and procedures.  I hold a Peace Officers Standards and Training Basic Certificate ("POST").

5.    Upon graduation, I was assigned to the Fullerton Police Department as a Police Officer and worked uniformed patrol for three years.  I then transferred to the Pismo Beach Police Department Patrol Division as a police officer and worked uniformed patrol for a total of about one year.  While on patrol, I conducted, as well as participated in, numerous preliminary investigations including, but not limited to, missing persons investigations, crimes of burglary, robbery, sexual assaults, identity theft, larceny, assaults, auto theft, weapon violations, mail thefts, and various narcotics related offenses.

6.    For my last two years at Pismo Beach Police Department, I worked as a Gang Task Force investigator for the San Luis Obispo County Sheriff's Department.  As a Gang Detective, I assisted with investigations on documenting gang members for previously reported incidents in various crimes including, but not limited to, wanted documented gang members and/or associates, gang enhancements, assaults, larceny, and narcotics investigations.  I have personally arrested and/or

2

investigated subjects for the possession of stolen property and thefts.

7.    I have received numerous hours of in-service training, consisting of briefings, lectures, online training and classes on various subjects including, but not limited to, gangs, firearms laws, DNA collection, synthetic drugs, coroner investigations, search and seizure, narcotics update, domestic violence, narcotic trafficker's update, pharmaceutical drug abuse training, identity theft, drug abuse recognition, Officer Involved Shooting training, Field Sobriety Tests/DUI, training related to the field of narcotics and investigations of cellular phones and mobile devices, narcotic investigations including surveillance and arrest of narcotic suspects, and the handling of, weighing, and field testing suspected narcotics.

### III.  SUMMARY OF PROBABLE CAUSE

8.    BARNETT was incarcerated in the San Luis Obispo County Jail from November 21, 2021, to January 5, 2022.  During his incarceration, I monitored BARNETT's calls and learned that he spoke to a person referred to as "Sam," who was later identified as Samuel MARTINEZ Jr., about the acquisition of firearms.  In these calls, BARNETT also arranged to have MARTINEZ Jr. pick him up from jail on January 5, 2022.  After reviewing the jail calls between BARNETT and MARTINEZ Jr., I became concerned that MARTINEZ Jr. would transport a firearm to the jail and provide it to BARNETT.

9.    On January 4, 2022, at approximately 11:30 p.m., SLOSD Deputy Jeremy Flores, San Luis Obispo Probation Officer ("DPO")

3

Jared Freitas, and I monitored the parking lot of the San Luis Obispo County Jail.  At approximately 12:34 a.m., we saw BARNETT and MARTINEZ Jr. exit the jail lobby and get into a silver Cadillac sedan, with MARTINEZ Jr. entering the driver seat and BARNETT getting in the front passenger seat.  MARTINEZ Jr. began driving the silver Cadillac, and Deputy Flores and DPO Freitas conducted a traffic stop.

10.  During the stop, Deputy Flores and DPO Freitas searched the car and discovered a Glock 19 and two loaded magazines in the back seat of MARTINEZ Jr.'s vehicle.  Deputy Flores inspected the firearm and noticed the serial numbers on the upper part of the barrel, the ejector port side of the upper slide, and the tab under the front portion of the lower receiver had all been filed down and were illegible.

### IV. <u>STATEMENT OF PROBABLE CAUSE</u>

11.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.    SLOSD Deputies Learn of Shooting of BARNETT and G.C.**

12.  In October 2021, a local law enforcement officer informed me about an investigation involving Patrick BARNETT and G.C., who both checked themselves into Marian Hospital in Santa Maria, California, suffering from gunshot wounds.  Both subjects ultimately recovered from their injuries and declined to cooperate with local law enforcement in the investigation into the shooting.

**B.   BARNETT Turns Himself into the SLOSD Sheriff's Office**

13.   On November 21, 2021, SLOSD Deputy Nick Anthony and I were working uniformed patrol for the San Luis Obispo County Sheriff's Office, when we were dispatched to Oceano, California, in response to a call from BARNETT's parole agent, Agent Marco Flores.  Agent Flores reported the following to Deputy Anthony:

a.   BARNETT told Agent Flores that he believed that G.C. was following him and was going to kill him in revenge for the October shooting.  As a result, BARNETT told Agent Flores that he wanted to be incarcerated so he had a safe place where G.C. could not hurt him.  Agent Flores arranged to have BARNETT meet Deputy Anthony and me at the SLOSD substation in Oceano, California.

14.   Upon arrival, Deputy Anthony examined BARNETT to determine if he was under the influence of a controlled substance.  After completing the exam, BARNETT was arrested for being under the influence of a controlled substance in violation of California Penal Code 11550 and was transported to San Luis Obispo County Jail, where he was booked on the charge.

**C.   On Recorded Jail Calls, BARNETT Asks MARTINEZ Jr. to Obtain a Gun for BARNETT When He Is Released**

15.   Based on my review of recorded calls from San Luis Obispo County Jail between November 21, 2021, and January 4, 2022, I know that BARNETT placed a number of calls to a phone number ending in -5257 in which BARNETT discussed the acquisition or purchase of firearms.  At the beginning of each call, a recording warned that "all phone calls are subject to

5

monitoring and recording."  All of these calls were made using
the San Luis Obispo County Jail pin that was assigned to
BARNETT, which lead me to believe that BARNETT placed the calls.
When I conducted a records check on the -5257 number using the
San Luis Obispo County Superior Court Website, I learned that
MARTINEZ Jr. had provided this number to law enforcement during
prior contacts.  Further corroborating my belief that BARNETT
was speaking to MARTINEZ Jr., BARNETT referred to the user of
the -5257 number as "Sam."  These jail calls included the
following:

         a.   In a call placed on December 7, 2021, to
the -5257 number, BARNETT and MARTINEZ Jr. had a conversation
that included the following excerpt:

| BARNETT: | Ask Cody if he still has access to that one for $200 bucks with the three clips. |
| MARTINEZ Jr.: | Ok I'll ask him. |
| BARNETT: | It was a 38 automatic compact and it has three clips and it was a ghost gun and he wanted $200 for it. |
| MARTINEZ Jr.: | Wow |

From listening to this call, I believe BARNETT wanted MARTINEZ
Jr. to ask a person named Cody about the availability of
firearms and ammunition.

         b.   In an excerpt of a voicemail placed on
December 20, 2021, to the 5257 number, BARNETT told MARTINEZ Jr.
the following:

6

| BARNETT: | Everything is in your hands, like I've been down 45 days and I've been begging you, begging you, hey Sam can you go get me something.  Can you go get me a Glock, can you get me a Glock 17, Glock 19, Glock 26, a SIG, a fucking anything dude.  You know what I'm saying.  Anything.  A Smith and Wesson, a MMP, a fucking 38 special plus p straight shoot no hammer, .357 police force issued snub.  Anything.  Am I giving a fuck about talking over this phone?  No, I'm over it I don't give a fuck, I don't give a fuck.  Fuck whoever listens to this phone.  Point blank simple.  Like I don't give a fuck. |

From listening to this call, I believe BARNETT is expressing his desire for a firearm from MARTINEZ Jr.  BARNETT tells MARTINEZ Jr. that he does not care which type of firearm he has, as he lists several different makes and models.  BARNETT also acknowledges that he does not care if anyone hears him talking about his request.

       c.   In an excerpt of another voicemail placed on December 20, 2021, to the 5257 number, BARNETT told MARTINEZ Jr. the following:

| BARNETT: | I waiting to see if you're going to come through for me this time.  45 days, it takes 10 days to clear in California, I'm waiting to see |

| | if you're going to come through this time.  I don't give a fuck, scratch the serial numbers off, do whatever you got to do to make yourself feel comfortable.  I don't give a fuck, buy a ghost gun online, I don't give a fuck.  I'm just waiting to see if you're going to take my feelings into consideration and make sure my sense of security is met. |
|---|---|

From listening to this call, I believe BARNETT is instructing MARTINEZ Jr. to get him a firearm.  BARNETT suggests that MARTINEZ Jr. could get him a non-traceable firearm or that MARTINEZ Jr. could remove the serial numbers on the firearm himself.  Based on my training and experience, I believe that BARNETT suggested this because he was not legally allowed to possess a firearm, so if MARTINEZ Jr. were to provide BARNETT a firearm without a serial number, it could not be traced to MARTINEZ Jr.

        d.   In a call placed on December 31, 2021, to the 5257 number, BARNETT and MARTINEZ Jr. had a conversation that included the following excerpt:

| BARNETT: | My mom is giving one of the .22 revolvers the second I walk out this door.  I don't need you to do that for me, I wanted you to show me that you got my back.  I shouldn't be saying this over the phone but honestly I really don't give a fuck, I'm just telling it to you how it is. |
|---|---|

8

From listening to this call, I believe BARNETT is continuing to express his desire to MARTINEZ Jr. to obtain a firearm for BARNETT when he leaves jail.

        e.   In a call placed on January 2, 2022, to the 5257 number, BARNETT and MARTINEZ Jr. had a conversation that included the following excerpt:

| BARNETT: | I told her I was going to talk to you and make sure cause, so you got me when I get out, like or do I need to have my mom get something out of the safe for me? |
|---|---|
| MARTINEZ Jr.: | Everything is taken care of dude. Everything's been taken care of. |
| BARNETT: | Alright, I just a stress box now. |

From listening to this call, I believe BARNETT is making sure MARTINEZ Jr. will provide him a firearm at the time of his release. MARTINEZ Jr. expresses to BARNETT that he has taken care of everything, which I believe indicates that MARTINEZ Jr. has agreed to provide BARNETT a firearm when he gets out of jail.

      **D.**    **Officers Stop on MARTINEZ Jr. and BARNETT After BARNETT's Release from Jail and Find a Glock 19 Firearm with Obliterated Serial Numbers in MARTINEZ Jr.'s Vehicle**

    16.   BARNETT was scheduled to be released from custody on January 5, 2022. In a jail call placed on January 4, 2022, to the 5257 number, BARNETT arranged to have MARTINEZ Jr. pick him up from jail. After reviewing the previous jail calls between BARNETT and MARTINEZ Jr., I became concerned that MARTINEZ Jr.

would transport a firearm to the jail and provide it to BARNETT.
I contacted Deputy Flores and DPO Freitas and informed them of
the situation.

     17.  On January 4, 2022, at approximately 11:30 p.m.,
Deputy Flores, DPO Freitas and I monitored the parking lot of
the San Luis Obispo County Jail.  I understand the following
from my personal participation, from speaking to Deputy Flores
and DPO Freitas, and from reviewing reports and bodycam video
from that evening:

          a.   While monitoring the parking lot, I saw a subject
who appeared to be MARTINEZ Jr. standing in the parking lot.  I
watched the subject get in and out of a silver Cadillac sedan
parked near the jail lobby.  At approximately 12:30 a.m., I saw
the man walk into the jail lobby and shortly after exit with
BARNETT.  Both subjects walked to a silver Cadillac sedan, where
the man who appeared to be MARTINEZ Jr. entered the driver seat
and BARNETT entered through the front passenger door.  I saw the
silver Cadillac begin to drive out of the jail parking lot, and
notified Deputy Flores and DPO Freitas.

          b.   When the silver Cadillac approached Deputy
Flores' position, Deputy Flores noticed the vehicle was not
displaying a front license plate, in violation of California
Vehicle Code 5200(a)(1).  Deputy Flores conducted a traffic stop
on the vehicle in front of the Sheriff's Office Gun Range at
1525 Kansas Avenue in San Luis Obispo, California.  The location
of the traffic stop was within the jail property, and there were

10

signs posted warning that people, property, and vehicles were subject to search.

c.    Deputy Flores contacted the driver of the silver Cadillac and advised him of the reason for the stop.  Deputy Flores then identified the driver as MARTINEZ Jr.  Deputy Flores also recognized the passenger in the front passenger seat as BARNETT, who is currently on state parole in California.

d.    Based on the information I provided to Deputy Flores and BARNETT's parole status, DPO Freitas and Deputy Flores elected to remove BARNETT from the vehicle and conduct a parole compliance check.

e.    Once BARNETT was removed from the vehicle, Deputy Flores advised MARTINEZ Jr. that he would be conducting a parole compliance search of the area where BARNETT was seated. MARTINEZ Jr. got out of his vehicle and Deputy Flores patted him down to ensure he had no weapons.  Deputy Flores asked MARTINEZ Jr. if he had any items in the car that he would be concerned about, and MARTINEZ Jr. responded that he had a handgun and ammunition inside of the car behind the driver's seat.

f.    Deputy Flores looked behind the driver's seat and found a black plastic box on the floorboard with the word "Glock" inscribed on it.  Inside the box, Deputy Flores found a Glock, model 19, 9mm pistol.  Next to the firearm, Deputy Flores found two Glock 9mm magazines loaded with 19 rounds of ammunition in total.  Deputy Flores also saw that the serial numbers on the upper part of the barrel, the ejector port side of the upper slide, and the tab under the front portion of the

11

lower receiver had all been filed down and were illegible. Deputy Flores did not locate any other contraband inside the vehicle.

          g.   On the rear passenger seat just above where the firearm was located, Deputy Flores saw a paper bag with items with BARNETT's name on them that appeared to contain BARNETT's belongings after he was released from jail.  Deputy Flores noted that BARNETT's belongings were right next to where the firearm was located, and that the firearm was not locked and was therefore accessible.

          h.   Deputy Flores handcuffed MARTINEZ Jr. and advised him of his Miranda rights.  MARTINEZ Jr. said he understood, and Deputy Flores asked MARTINEZ Jr. about the firearm.  MARTINEZ Jr. said that the firearm belonged to him and that he had filed the serial numbers off himself with the intent of painting the firearm.  MARTINEZ Jr. said that he did not know that he was not supposed to alter or obliterate the serial number.

          i.   Deputy Flores then spoke with BARNETT, who was seated in the backseat of the patrol car.  BARNETT was advised of his Miranda rights and said he understood.  BARNETT said that he just got out of jail and that he did not know about the firearm.  BARNETT then invoked his right to counsel, and Deputy Flores terminated the interview.

    **E.**   **BARNETT's Criminal History**

    18.  I have reviewed BARNETT's criminal history and determined that BARNETT has been convicted of at least the

12

following crimes punishable by a term of imprisonment exceeding one year:

      a.   First Degree Burglary, in violation of California Penal Code Section 459, in the Superior Court of the State of California, County of San Luis Obispo, case number F471614001, on or about October 19, 2015; and

      b.   Second Degree Burglary, in violation of California Penal Code Section 459, and Attempted Robbery, in violation of California Penal Code Sections 664 and 211, in the Superior Court of the State of California, County of San Luis Obispo, case number 16F-05319, on or about February 16, 2017.

    **F.**    **Interstate Nexus**

19.  On or about February 25, 2022, FBI Special Agent Brian J. Sullivan, a certified interstate nexus specialist, examined the Glock model 19 firearm and the nineteen rounds of ammunition seized from MARTINEZ's vehicle on January 5, 2022.  Agent Sullivan concluded that the firearm and ammunition had travelled in interstate commerce and that the serial number on the Glock model 19 firearm had been altered or obliterated.

//

//

//

13

## V.   CONCLUSION

20.   For the reasons described above, there is probable cause to believe that MARTINEZ Jr. and BARNETT have committed a violation of 18 U.S.C. § 922(k): Possession of a Firearm with an Altered or Obliterated Serial Number.


Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 1st day of March, 2022.

THE HONORABLE LOUISE A. LAMOTHE
UNITED STATES MAGISTRATE JUDGE

14